## MOORE v. UNITED STATES.

No. 10193.

Circuit Court of Appeals, Fifth Circuit.

June 22, 1942.

J. T. Sisk, of Elberton, Ga., for appellant.

T. Hoyt Davis, U. S. Atty., and T. Reese Watkins, Asst. U. S. Atty., both of Macon, Ga., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

HOLMES, Circuit Judge.

William Austin Moore was indicted, tried, and convicted in the court below for knowingly interfering by force and violence with the administration of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq. Appealing from the sentence imposed upon him, Moore contends that his demurrer to the indictment should have been sustained; that the evidence was insufficient to sustain the verdict; and that the court committed reversible error in certain of its instructions to the jury.

Section 11 of the Selective Training and Service Act of 1940 provides that any person "who shall knowingly hinder or interfere in any way by force or violence with the administration of this Act or the rules or regulations made pursuant thereto, or conspire to do so, shall, upon conviction in the district court of the United States having jurisdiction thereof, be punished" by fine or imprisonment or both.[1]

The indictment, which was in one count, charged the defendant with knowingly hindering and interfering by force and violence with the administration of the Act, and the rules and regulations made pursuant thereto, by assaulting and beating the chairman of the local draft board for Elbert County, Georgia, and thereby intimidating the members of the local board in the performance of the duties required of them in the administration of the Act.

■■ The function of an indictment is to apprise a defendant fully and clearly of the nature and extent of the charges made against him, so that he will be enabled to make his defense, and, after judgment, plead the judgment in bar of further prosecution for the same offense.[2] This indictment followed the language of the statute painstakingly, and particularized with exactness the acts relied upon to sustain the charge. It is difficult to conceive how the indictment could more lucidly have advised the defendant of the precise crime charged, or in what way it might have been misleading, and we think the demurrer to the indictment was properly overruled.

Coming to the question of the sufficiency of the evidence, these are the facts: As re-

[1] 50 U.S.C.A.Appendix, § 311, 54 Stat. 894.

[2] United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516; Bartell v. United States, 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861.

quired by the Selective Training and Service Act, Moore registered in Elbert County, Georgia, in October, 1940. In due course he filed his questionnaire with the local draft board, in which he stated that his mother was wholly dependent upon him for support, and his father partially dependent. At-tached to the questionnaire were affidavits of the parents attesting their status as dependents of their son. After considering the questionnaire the local board notified Moore by card that he had been placed in group 1-A, under which classification the registrant was, if physically fit, subject to immediate induction. When he received the notice Moore was privileged to have his classification reviewed upon additional evidence by the local board, or to appeal therefrom to the appeal board.

Believing himself entitled to a 3-A classification on the ground of his showing as to dependents, Moore was angered by the failure of the local board to classify him accordingly, and by its apparent disbelief of the facts sworn to by him and his parents. The day he received his notice he contacted the clerk of the draft board and told him, in obscene language, that he would not allow a certain illiterate member of the local board to put him in the army. Moore then saw the government appeal agent for the county in draft matters, to whom he said that he was going to "straighten out" the local board in regard to his classification. The following morning Moore sought out Fred Auld, the chairman of the local board, at Auld's place of business, and belligerently demanded an explanation of his classification. He was told that the board had studied his questionnaire, had voted its convictions, and had considered him within the 1-A classification, but that it would review his case if he had additional evidence to offer, or Moore could appeal its decision to the appeal board. Moore accused Auld of calling his parents liars, and demanded that he take off his spectacles. Auld denied the accusation, refused to remove his glasses, and urged Moore to see him at another time when he was in a better frame of mind. Moore then struck Auld a heavy blow over the eye, breaking the skin and smashing his glasses. After the altercation Moore indicated that he was disturbed about his draft status, because he had a mother and father to support; and he asserted that he intended to administer similar bodily punishment to a second member of the local board.

The assault upon the chairman of the local board unquestionably was interference by force and violence with the administration of the Act. The local board at that time had jurisdiction to take further action upon Moore's draft status, and, in addition, was the proper authority for the classification of all other draftees within the county. The orderly functioning of the board could not continue if its members were physically incapacitated from attending meetings or if any one of them was restrained from exercising his free judgment by fear. The jury also was justified in concluding from the evidence that Moore committed the assault well knowing that his acts would so hinder and interfere with the board's performance of its duties. The day before the assault was committed, Moore had announced that he would prevent a member of the board from putting him in the army, and that he would straighten out the board with regard to his classification. His later acts made clear that it was his intention to produce this result by the illegal method of force and violence rather than the legal procedure of producing additional evidence.

On the trial below the defendant made no objection to the instructions given by the court to the jury, and he may not now assign error thereto.[3] The record contains no reversible error, and the judgment appealed from is affirmed.

---

[3] See Rule 8 of the Revised Rules of the Supreme Court, 28 U.S.C.A. following section 354, made applicable under Rule 9 of the Rules of Practice and Procedure, 28 U.S.C.A. following section 723c, under the enabling act of March 8, 1934, 28 U.S.C.A. § 723a.